UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 3:19-CR-123 |
| | ) |
| JUSTIN DARELL COZART | ) |

## MEMORANDUM AND ORDER

The single count Indictment in this case charges the defendant with knowing possession of firearms by a previously convicted felon. The defendant moves to suppress a purportedly unlawful "search and seizure of the Defendant and exclude any evidence illegally seized pursuant to the Fourth Amendment to the Constitution of the United States." [Doc. 36-1]. The United States has responded in opposition to the motion, and the defendant has submitted a reply. [Docs. 42, 43].

United States Magistrate Judge H. Bruce Guyton conducted an evidentiary hearing and heard arguments on June 29, 2021. Now before the Court is the magistrate judge's January 24, 2022, report and recommendation ("R&R"), recommending that the defendant's motion be denied. [Doc. 53].

The defendant has filed objections to the R&R. [Docs. 66, 67]. The United States has again responded in opposition. [Doc. 76]. The Court has thoroughly reviewed the R&R and the parties' filings along with the transcript of Magistrate Judge Guyton's evidentiary hearing. For the reasons that follow, the defendant's objections will be

overruled and his suppression motion will be denied.

I.

*Motion and Objections*

A. <u>Standard of Review</u>

A district court is both statutorily and constitutionally required to conduct a *de novo* review of a magistrate judge's report and recommendation. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." *See id.*; 28 U.S.C. § 636(b). A district court need not provide *de novo* review where objections to a report and recommendation are frivolous, conclusive, or general. *See Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).

B. <u>Factual Background</u>

Pages three through fifteen of Magistrate Judge Guyton's R&R contain a summary of the testimony and other evidence presented in this case, along with findings of fact. The Court considers the summary and findings to be accurate, and they are adopted.

In brief, Loudon County Sheriff's Office investigators, acting on an informant's tip, went to a residence in Loudon County to locate and arrest Elizabeth Kress. The residence has a long driveway, estimated to be eighty to one hundred yards long.

Investigator Charles Huskin was the first to arrive. He drove up to the residence and saw Ms. Kress and the defendant sitting in a vehicle in the driveway. In plain view,

2

the defendant was in the driver's seat with his arm resting on a shotgun. Investigator Huskin asked both persons to exit the vehicle.

Within the next ten minutes, other officers arrived including Investigator Marty Stanley. Ms. Kress was taken into custody. Investigator Stanley walked to the vehicle, saw the shotgun, and asked the defendant about it. The defendant replied that there were two guns in the vehicle but he denied ownership of either of them. Investigator Stanley then saw a rifle in the back seat.

Investigators Huskin and Stanley each previously worked at the Loudon County Jail. Based on their prior encounters with the defendant, Investigator Huskin suspected that the defendant was a felon, and Investigator Stanley knew that he was. The investigators searched the vehicle, seized the guns, and arrested the defendant for being a felon in possession of firearms.

C. <u>Defendant's Objections</u>

The defendant presents the following specific objections to the R&R:

1. The defendant concedes that he was "neither owner nor renter" of the subject residence but he objects that the magistrate judge erred in concluding that the defendant was not a regular overnight guest "afforded the protections of reasonable expectation of privacy by the Fourth Amendment of the United States Constitution."

2. The defendant objects that the magistrate judge erred in concluding that law enforcement did not need a search warrant to enter the subject property.

3. The defendant objects that the magistrate judge erred in concluding that the investigators properly seized the firearms under the plain view exception to the search warrant requirement.
.

3

Case 3:19-cr-00123-RLJ-JEM   Document 78   Filed 04/14/22   Page 3 of 12   PageID #: 351

D. <u>Analysis</u>

1. <u>Reasonable Expectation of Privacy</u>

The defendant contends that he is "a longtime close friend" of the renter of the subject property and that he "regularly stays overnight at the address." As such, the defendant objects that he had a reasonable expectation of privacy and thus may challenge the officers' warrantless entry onto the property.

On this issue, the magistrate judge concluded,

> Defendant contends that he was an overnight guest at the residence and that he stays there regularly [Doc. 43, p.2]. An overnight social guest "has a reasonable expectation of privacy in the place where he sleeps at night." *United States v. Allen*, 720 F. App'x 254, 257 (6th Cir. 2018) (citing *Minnesota v. Oleson*, 495 U.S. 91, 96-97 (1990)). Our appellate court affords broad Fourth Amendment protections to "nearly all overnight guests, clarifying that these Fourth Amendment protections extend to those who occupy common areas in an apartment that are freely accessible to others." *Id.* In the instant case, the record contains only Defendant Cozart's bare assertion that he was an overnight guest at 7900 Dry Valley Road, which was owned by the Loudon County District Attorney and rented by an individual named Chris Darnell. Defendant provided no explanation of his relationship to Mr. Darnell. On the video from Investigator Huskin's body camera, Defendant told the officers that he fell asleep in the SUV while waiting on Chris Darnell to return. Ms. Kress told Investigator Huskin that Chris Darnell had just left the residence to go to work. The fact that Defendant was asleep in a car in the driveway and did not seek to enter the residence seems to belie his assertion that he was an overnight guest at the residence.
>
> The Supreme Court has rejected the premise that anyone legitimately in the place searched may challenge the legality of the search. *Rakas*, 439 U.S. at 134; *Carter*, 525 U.S. at 90. "[A]n overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Id.* An individual who is "'casual transient visitor'" to another's residence cannot challenge an officer's warrantless entry. *United States v. McNeal*, 955 F.2d 1067, 1071-74 (6th Cir. 1992). In the instant case, the record is devoid of evidence that Defendant

4

> Cozart was anything more than a casual transient visitor to the residence. Defendant Cozart has failed to carry his burden of demonstrating he has a legitimate expectation of privacy in 7900 Dry Valley Road. As such, the Court finds that he cannot challenge law enforcement's warrantless entry onto the property.

[Doc. 53, p. 17-18].

The Court agrees that the defendant has presented no credible evidence that he "was anything more than a casual transient visitor to the residence." The defendant was found asleep in a vehicle in a driveway, purportedly waiting on the renter to return home from work. The magistrate judge correctly observed that sleeping in the driveway, rather than entering the home, suggests that the defendant was not an overnight guest.

The defendant faults the magistrate judge for not "considering other facts, such as if [the renter] didn't acquiesce to the overnight stay of Mr. Cozart, he would have told him to leave or called the law to assist in repelling a trespasser." However, the defendant has presented no evidence that the renter even knew that the defendant and Ms. Kress were there (where, again, they were sitting in a vehicle purportedly waiting on the renter to return home from work).

The defendant also faults the officers for not asking the defendant if he had a key to the house. The defendant has offered no evidence, however, that he had a key.

On the evidence presented, the magistrate judge did not err in concluding that the defendant did not have a legitimate expectation of privacy in the residence and that he therefore lacks standing to challenge the warrantless entry onto that property. The defendant's first objection will be overruled.

2. <u>Warrantless Entry</u>

Presuming that he did have a legitimate expectation of privacy in the residence, the defendant objects to the magistrate judge's finding that law enforcement did not need a warrant to enter the property. Specifically, the defendant objects that when the investigators approached the vehicle, rather than walking directly to and from the residence's front door, their presence extended beyond a permissible "knock and talk."

The magistrate judge addressed this issue as follows:

> In the event the District Judge disagrees with the undersigned's finding that Defendant Cozart lacks a reasonable expectation of privacy in the residence, the Court examines whether law enforcement properly entered the driveway of the residence without a search warrant to arrest Ms. Kress. For purposes of this analysis, the Court will assume Defendant Cozart was an overnight guest at the residence. Relying on *Collins v. Virginia*, 138 S. Ct. 1663, 1675 (2018), Defendant contends that officers could not enter the property and search the SUV without a search warrant. The Government responds that the officers' entry onto the driveway and approach of the residence was a consensual encounter requiring neither a search warrant, nor any level of suspicion. . . .
>
> In *Collins v. Virginia*, the Supreme Court examined the intersection of two well-settled Fourth Amendment principles, the automobile exception to the warrant requirement and the Fourth Amendment's protection of the curtilage of a home. *Id.* at 1669. In *Collins*, an officer parked on the street, observed a motorcycle, which he suspected was stolen, covered by a tarp and parked in the driveway of the house where defendant was a frequent overnight guest. *Id.* at 1668. The officer walked to the top of the driveway, removed the tarp, and confirmed the motorcycle was stolen by checking the license plate and vehicle identification numbers. *Id.* After photographing the motorcycle and replacing the tarp, the officer returned to his car to wait for defendant. *Id.* When defendant returned home, the officer knocked on the front door, which was answered by defendant, who agreed to talk to the officer, admitted he bought the motorcycle without a title, and was arrested. *Id.* at 1668-69. The state supreme court held the warrantless search of the motorcycle was constitutional under the automobile exception, because the officer had

probable cause to believe the motorcycle was stolen. *Id.* at 1669. The Supreme Court reversed, holding that the automobile exception did not justify the warrantless entry onto the curtilage of defendant's home. *Id.* at 1671-73.

At the heart of the Fourth Amendment is the individual's right to be free of governmental intrusion in his or her home. *Id.* at 1663. This freedom extends also to the curtilage, which is the "area 'immediately surrounding and associated with the home'" and is considered to be "'part of the home itself for Fourth Amendment purposes.'" *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)). "When a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred." *Collins*, 138 S. Ct. at 1670. Such an intrusion "is presumptively unreasonable absent a warrant." *Id.* In *Collins*, the Supreme Court held that the automobile exception, which justifies only the search of the vehicle, did not justify the entry onto defendant's curtilage. *Id.* at 1671-72.

> Just as an officer must have a lawful right of access to any contraband he discovers in plain view in order to seize it without a warrant, and just as an officer must have a lawful right of access [i.e., an arrest warrant,] in order to arrest a person in his home, so, too, an officer must have a lawful right of access to a vehicle in order to search it pursuant to the automobile exception. The automobile exception does not afford the necessary lawful right of access to search a vehicle parked within a home or its curtilage because it does not justify an intrusion on a person's separate and substantial Fourth Amendment interest in his home and curtilage.

*Id.* at 1672.

Defendant argues that Investigator Huskin's actions of leaving the road and entering the curtilage of the residence in order to search the SUV violated his rights under the Fourth Amendment. The Government points out that the instant facts differ from those in *Collins* in two essential ways: Investigator Huskin intended to knock on the door of the residence, not search a car, and Investigator Huskin had a capias, i.e., an arrest warrant, authorizing his entry onto the curtilage. The Court finds Investigator Huskin's entry onto the driveway to execute a capias distinguishes this case from *Collins*.

7

An officer may enter onto private property by the path accessible to the public and initiate a consensual encounter, called a "knock and talk," without running afoul of the Fourth Amendment. *United States v. Thomas*, 430 F.3d 274, 277 (6th Cir. 2005), *cert. denied*, 549 U.S. 819 (2006). "When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do[,]" and the resident, in turn, is not obligated to open the door or talk to the officer. *Kentucky v. King*, 563 U.S. 452, 469 (2011). "[T]he officers' right to enter the property like any other visitor comes with the same limits of that 'traditional invitation': 'typically ... approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave.'" *Morgan v. Fairfield County*, 903 F.3d 553, 563 (6th Cir. 2018) (quoting *Jardines*, 569 U.S. at 8), *cert. denied*, 139 S. Ct. 1377 (2019).

In the instant case, Investigator Huskin drove on and walked on the driveway, like any visitor to the property might do. He did not detour from the driveway but, instead, encountered Defendant and Ms. Kress in the SUV on the driveway after parking behind the SUV. Thus, the Court finds that Investigator Huskin did not violate the Fourth Amendment by entering the driveway of 7900 Dry Valley Road, where he encountered Defendant and Ms. Kress.

As a closely related point, Investigator Huskin entered the driveway to execute the capias, not to search the SUV. As quoted above, *Collins* holds an officer engages in a search under the Fourth Amendment, when the officer "physically intrudes on the curtilage *to gather evidence*[.]" 138 S. Ct. at 1670 (emphasis added). "The officer must engage in some sort of investigation to implicate the Fourth Amendment's protections." *Morgan*, 903 F.3d at 573 (J. Thapar, concurring in part and dissenting in part). When the officer in *Collins* entered the driveway to investigate whether the motorcycle under the tarp was the stolen motorcycle, he violated the Fourth Amendment. 138 S. Ct. at 1671. When the officer in *Collins* entered the driveway a second time to knock on the door and to talk to the defendant, he did not. In the instant case, the Court finds that Investigator Huskin did not enter the property in order to search the SUV, as Defendant alleges, but instead entered to execute the capias.

. . .

> [The defendant's arguments do] not undermine the officer's authority to enter *onto the property*, because the officers never entered the residence. "[T]he caselaw makes clear that the reasonable-belief requirement is triggered only at the point when the police actually enter the home. Police officers are not precluded from knocking on the door of a residence in an effort to gather information supporting a reasonable belief that the suspect is inside." *El Bey*, 530 F.3d at 417. In assessing whether officers had a reasonable belief that the subject of an arrest warrant was at the house, the court observed that the officers did not "barge into the house" but, instead, conducted a knock and talk, "which they are entitled to do." *United States v. Taylor*, 666 F.3d 406, 409 (6th Cir. 2012). Here, law enforcement did not enter the residence at 7900 Dry Valley Road but, instead, used the tip on Ms. Kress's location to enter the driveway, an area by which the public may access the residence.
>
> For the reasons outlined above, the Court finds that law enforcement did not need a search warrant to enter the driveway of 7900 Dry Valley Road in order to arrest Ms. Kress on a capias.

[Doc. 53, p. 18-22, 26 (footnotes omitted)].

The magistrate judge correctly analyzed this issue. The defendant's objection that Investigator Huskin walking to the vehicle in the driveway, rather than walking directly to and from the front door of the residence, somehow converted the encounter into something other than a knock and talk is wholly unpersuasive. By walking to the vehicle in the driveway to ascertain Ms. Kress's presence, he did no more than a member of the public could do. He did not walk to the vehicle to search for evidence. He did so to confirm Ms. Kress's whereabouts and to then arrest her. While there for that purpose, Investigator Huskin saw the shotgun in plain view under the defendant's elbow.

Investigator Huskin's initial encounter with the vehicle was the equivalent of a permissible knock and talk. The defendant's objection on this issue will be overruled.

9

Case 3:19-cr-00123-RLJ-JEM   Document 78   Filed 04/14/22   Page 9 of 12   PageID #: 357

3. <u>Seizure of Firearms</u>

Lastly, the defendant objects to the magistrate judge's conclusion that the search of the vehicle and the seizure of the firearms were permissible under the plain view exception to the search warrant requirement. Specifically, the defendant objects that

> once Ms. Kress had been taken into custody and was no longer in the SUV, there was no need to make any "plain view" examination of the SUV. Additionally, if the nature of the guns themselves did not, immediately upon observing them, present themselves as evidence of criminal activity—and under the facts developed at the suppression hearing they did not—then the plain view exception to the warrant requirement was improperly relied upon by the United States; and the Report committed legal error in relying on the plain view exception as a basis for seizure of the guns.

[Doc. 66, p. 6].

The Court finds no error. The magistrate judge correctly set forth the pertinent legal authority as follows:

> In order for evidence to fall within the plain view exception, the evidence in question must be "(1) in plain view; (2) of a character that is immediately incriminating; (3) viewed by an officer lawfully located in a place from where the object can be seen; and (4) seized by an officer who has a lawful right of access to the object itself." *United States v. Roark*, 36 F.3d 14, 18 (6th Cir. 1994) (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990)). In the instant case, the Court finds that Deputy Huskin saw a long gun on the console of the SUV, when he came to the open window of the vehicle, while lawfully on the driveway to conduct a knock and talk at the residence. Approximately ten minutes later, Investigator Stanley saw the firearm on the console and a second firearm on the backseat of the SUV, both observed through the windows of the SUV, while Investigator Stanley was on the property processing the arrest of Ms. Kress. The Court finds the first and third requirements are met. The Court examines whether the firearms were of a character that is immediately incriminating and whether the officers could lawfully seize the firearms from the vehicle.

> "[T]he 'plain view' doctrine requires that the criminality of the articles before the officers be 'immediately apparent.'" *United States v. McLevain*, 310 F.3d 434, 440 (6th Cir. 2002) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971)). Determining whether an item is immediately incriminating "does not demand an 'unduly high degree of certainty;' rather, a plain view seizure is 'presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.'" *United States v. Calloway*, 116 F.3d 1129, 1133 (6th Cir.) (quoting *Texas v. Brown*, 460 U.S. 730, 741-42 (1983) & *Payton*, 445 U.S. at 587 (emphasis omitted)), *cert. denied,* 522 U.S. 925 (1997). In assessing whether the incriminating character of an item was immediately apparent, the Court is guided by the presence of any of the following three factors:
>
>> (1) a nexus between the seized object and the [suspected criminal activity]; (2) whether the intrinsic nature or appearance of the seized object gives probable cause to believe that it is associated with criminal activity; and (3) whether the executing officers can at the time of discovery of the object on the facts then available to them determine probable cause of the object's incriminating nature.
>
> *United State v. Pacheco*, 841 F.3d 384, 395 (6th Cir. 2019) (quotation omitted, additions in original). No one of these three factors is required but, instead, any of the three may inform the Court's analysis. *Id.*

[Doc. 53, p. 27-28].

Investigator Huskins lawfully conducted the equivalent of a knock and talk. While doing so, he saw in plain view the defendant's elbow resting on a firearm. Investigator Huskins, based on prior experience, strongly suspected that the defendant is a felon. Inspector Stanley, who arrived on scene shortly thereafter, knew from prior experience that the defendant is a felon. Accordingly, at that time one officer had probable grounds, and the other had definite grounds, to believe that the shotgun was incriminating evidence. Thus, at that point, the officers were entitled, under the plain view exception, to search the vehicle and seize the firearms contained therein.

The defendant's third objection will accordingly be overruled.

II.

*Conclusion*

The court **ADOPTS** the findings of fact and conclusions of law set out in the report and recommendation [doc. 53]. The defendant's objections to that R&R [docs. 66, 67] are **OVERRULED**, and his suppression motion [doc. 36-1] is **DENIED**.

This case remains set for trial on May 17, 2022. The plea deadline remains April 18, 2022.[1]

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge

---

[1] A motion to continue trial [doc. 77] was filed on April 13, 2022, and remains pending.